Our next case is the United States v. Jamar Jarvis, appeal number 22-1146. Thank you, your honor. May it please the court, counsel. Mark Rosen appears on behalf of the defendant, Jamar Jarvis. I think this is a case, it's pretty clear it's a plain error situation here because the rule 29 motion that counsel filed did not involve the specific arguments that we have, but I think it's pretty clear that these should have been there. It's pretty obvious that the instrumentality that was the witness identified as being put in her face during this armed robbery at 1130 at night in a dark alley surrounded by garbage cans, which you can't even see on the video, materially different than the one that was later recovered in the backpack. I think she was a detective of 27 years, I can't remember how many years, and she specifically said that it had an extended clip, and the one that we found later on was found in the backpack did not have the extended clip. It's different. Clips can be changed, right? Certainly, but they didn't find the other clip. I mean, they still have the burden of proof. There still has to be reasonable inferences there. There's no indication as to why they would change the clip or anything of that nature. The fact of the matter is they were relying upon what they found in the backpack, being the gun that they found with the clip. The clip was there, and it was a smaller clip than the extended clip that was found. I don't know why they would go about and change the clip to put an smaller clip in there later on down the road. It just wasn't the same implementation. It wasn't the same apparatus. Was the use of a fake gun raised? Pardon me, Your Honor? The use of a fake gun argument, was that raised below? No, it wasn't. So we agree that plain error would apply. Plain error, this is a plain error case, totally a plain error case, and I think also we have the issue with the issuers of the fake gun. I think that that's there before the court, the defendant. I mean, the government has never rebutted that these sorts of toys exist out there in the internet and in the world. I think these companies out there, such as the one I had cited in my brief, provide these things for the specific purpose of making young people think that they're really cool with slides that are metal, which is the whole basis that this victim said, I know that that was a real gun because it had a slide that was metal. But that's what she said. That's exactly what she said. How is the government, how would the government ever approve a real gun in a situation like this, unless they apprehended Mr. Jarvis with the gun in his hand, and she said, that is the gun that he was holding in my face 15 seconds ago. This is an interesting jury argument, okay, that the government didn't prove it's a real gun. But from plain error review, you're asking the judge to sit there and listen to the jury trial, and you're asking the judge, the defendant doesn't make this argument, the judge is just supposed to pull it out and say, well, wait a minute, it's obvious to me that this was not a real gun, despite the victim's testimony, who happened to be a Chicago police officer. Boy, that's a lot to ask. It is a lot, but the thing is, and that's where the thing comes in with her becoming a Chicago police officer, saying, you know, you can say, if I see, and somebody says, oh, it looks like you have an extended gun, hey, you know, what do I do? I'm just, I'm just, I just give you an observation, as defense lawyer and as prosecutor, I was always a bit surprised that when someone had a gun pointed in their face, that they were able to identify the color of their gun, okay? Let alone the make of the gun, the magazine. So I always expected there would be some error in the description of the gun. You're thinking, all right, is my head going to get blown off here? Not how am I going to identify this gun later when this guy is prosecuted. That's fine, except she volunteered that it had an extended clip. She was a detective of 27 years. And there was no discussion of that, right, at trial? About the extended clip. There was no attempt to argue that that disproved the case. And that's, I would think that's the kind of thing that, if it's a big deal, I would expect the defense to do something with it, and let the government and the witness respond as best they could. We don't have any of that here. No, we don't. And that's why, it's a, it's a plain error argument. I mean, I think, I discussed this with my client as to whether or not he wanted to go forward with what you've got, because I like what you've got. Because I, they're clear of the thing, that if this was a state court, I would have gone in effective assistance of counsel in state court and said, this should have been argued. But my client said, that's why we're having a plain error argument here to do it. Because I think it does meet the plain error standard. So do you believe the air pistol description would, that we're bringing here, would have been more appropriate under a collateral attack? And maybe a 2255 petition? Possible, well, that's what would, my clients, we discussed that. And my client said, you know, go with what you've got with the plain error argument, because I like your arguments that you've got these things. It's not necessarily in either order. Well, that's what. But, but what do you do, for example, with the Carter case, and it cites the McGee case, where we've got discrepancies in the description of the relevant firearm. And we repeatedly have just said, look, that's a jury question. That's fine. But it was never brought out to the jury as this being an issue. This was, this was the situation where you've got the detective. And once again, the government said, you know, believe this detective. They cleared it. This is a long-term detective. She came in, and she said, it has this facility on it. It has this feature on it. There was no, they could have, if they had brought her back in, they could have easily done that. She was around and said, after they recovered the firearm, said, is this the firearm that Mr. Jarvis stuck in your face? And she said, yes. Then, then we wouldn't be here. But didn't we have here testimony? Didn't that happen at trial? Pardon me? Didn't that happen at trial? No, it did not. All they did was put, the victim came on, and then, then she, they left. Then they talked about finding the backpack, and that's all they did. They, nobody, she never came back on, from my recollection of the trial. She's not able to say, that's the gun, right? She couldn't, she wouldn't expect that, right? I don't know. I know, but it was never presented. I mean, that would have been, you know, if she would have either said yes or no. But the fact of the matter is, it didn't happen. But the jury did hear testimony from the victim that Mr. Jarvis pointed a gun in my face. What she perceived to be a gun, yes. And there was also, I'm sorry, let me, wasn't there also a follow-up with testimony from that victim that she believed the gun was real? Yes. And so, there was a jury credibility determination made. And she said she believed the gun was real because she identified it by the slide. She said, when I saw that slide, I knew the gun was real. Which leads to the whole issue about these fake guns. Mr. Rosen, there's more to that. Someone said, I'm going to blow your head off. And then the police identify the vehicle. They chase down the defendant. He's carrying the backpack. They recover a real gun. I mean, this probably wasn't a real close case, is my guess. Well, I understand all those. Those are the three of the four elements I'm not disputing. It's just the second, because this goes to the second element, which is whether or not my client had the intent to cause a death or great bodily harm. And I think, as Joan's case said, which is pretty clear, that if you've got somebody who uses an unloaded firearm, it becomes a relevant issue, is whether or not there was the intent to cause death or great bodily harm. That's where this whole situation comes in. But don't the facts of this case get around that? Because the allegations were that Jarvis, while pointing a gun in her face, fanned around her with four other individuals, imposing a serious threat that if you didn't comply with the request or with the demand, that she would be injured. She would be. I think the issue was whether or not she would be shot. It was basically, do you want to die tonight while he's pointing? The person to the left said that. But there's three other individuals standing there. Not do you want to. How does it feel to know you're going to die tonight? Correct. And I think they were referring to the gun. Because once she gave the keys up, they didn't do anything. They didn't fire at her. She ran away and they left. And they took the gun. So that wasn't clearly something that was done. I think everything all that was referring to this alleged gun that was in front of her face, which, as I've indicated, it's not what was recovered. And it's just- So I've got to ask you, Mr. Rosen, about the theory for including this internet ad in your appendix. Um, you were correct that we have required contents for the appendix. Correct. But I have never seen a claim of a right to include material that is not in the district court record before. And I was arguing that because I had put that in there. As I put in my reply brief, I don't know what would have happened if I had put it in. It's not something that would require discussion by the district court. The government has never asserted that these sorts of toys don't exist. It's- I think the court can take judicial notice that it does exist. I've seen opinions by this court where they refer to authoritative sources that are not part of the record in terms of supporting- I would discourage that, but- I understand. I'm just saying from my observation. Fair enough, fair enough. Would Rule 10e not allow this, though? Pardon me? Rule 10e. I don't remember what Rule 10e was. Supplementing the record on appeal. Oh, um, I don't know. I didn't go that route, Your Honor. I did go with the Rule 208e with the- It was the argument brought up by the government that Rule 10e blocks the court. Okay, I apologize. I'm out of time. Were you trial counsel or was someone else? Somebody else was your record. Okay, because I looked in your brief and you were the only firm you identified as having represented Mr. Jarvis. Oh, I'm sorry. No. He had a different firm for trial. I'm the only firm that represented him for appeal. Okay, thank you. I apologize for anything. Thank you, Mr. Rosen. Okay, Mr. Tucker. Good morning, Your Honors. Brad Tucker for the United States. This court should affirm Mr. Jarvis's convictions. First, there was sufficient evidence that he brandished a real as opposed to a fake gun. A plain error of review applies here, so for Mr. Jarvis to prevail, the record must be devoid of any evidence that the gun was real and he must show that a manifest miscarriage of justice would result. That is not the case here. As the court was pointing out, the victim of this carjacking testified that the gun she saw pointed at her from close range, just a few feet away, was real. Do you think she was offering an expert opinion, Detective Iser? No, Your Honor. I think she was drawing on her own experience and she was testifying to something she actually saw happen. It's not as though she was being shown a weapon that she didn't see for herself. It was based on the events she perceived herself, not a gun that was shown to her, maybe, you know, assume she's not involved in this and sees it later, in which case I would agree it's probably expert testimony. But a layman, for example, who's a non-police officer who's familiar with a lot of firearms in their own lives might be able to offer a similar bit of testimony. Yes, Your Honor. It seemed real to me, right? Okay. Defendant has pointed out, you know, potentially some inconsistencies in her description of the gun. Even if that were the case, and I do think the victim sort of equivocated and she said it had like an extended clip and then she goes on to say it was just a gun. Regardless of whether or not she was off on a detail, she said it was a real gun. And as the court pointed out, there's many cases that say a witness doesn't have to get it exactly right. And it's a jury credibility thing for the jury to determine whether or not they think she got it right. And they clearly thought she got it right and that it was a real gun. Beyond the victim's testimony, there was other evidence that the gun was real. As the district court itself pointed out on video shortly after the robbery, Mr. Jarvis was seen carrying a pretty distinctive tan backpack. And then you fast forward another 20, 30 minutes and that backpack is found to have a loaded gun with a round chambered in it. He also, defendant also made comments on a recorded jail call, admitting that he had a gun that night. All of that evidence in the record shows he used a real and not a fake gun. I want to quickly address defendant's argument that if the gun was fake, the government necessarily fell short of showing he had intent to cause death or serious bodily injury, as required by the carjacking statute. That just simply misstates the law. There's no requirement in that statute anymore that you have to use a gun. Turning to defendant's second argument, there was also sufficient evidence that defendant acted with the required intent to cause death or serious bodily harm. As I said, the evidence showed he used a real gun. He pointed at the victim during the carjacking. From that, the jury was entitled to conclude that he had the required intent. Apart from the gun, there was also a statement made by one of the other carjackers that the court has already pointed out. That statement was to the effect of, how does it feel to know you're going to die tonight? While that statement was made, Mr. Jarvis continued to hold a gun at the victim's head. Before and after, his participation in that way showed that he had the same intent as communicated by that comment. So that's another basis on which the court can affirm that he had the required intent. Unless there's any other questions, for these reasons, the government has asked this court to affirm. Thank you, Mr. Tucker. Mr. Rosen, would you like some rebuttal? Okay, we'll give you two minutes. I looked at the Carter case, Your Honor. I was looking it up in my reply read. That was materially different from this. From what I recall with reading that case is that there was testimony outside of just the victim. There was a co-conspirator who basically testified about the placement of the gun and how they recovered the gun in a van. So I don't think that that's just, it's the same. She based her expertise based upon the slide. That's what it was. And that's what her total basis was. She said unequivocally, I knew it was a real gun based upon the slide. And I know we get, I didn't look up Rule 10e, Your Honor, but I know that basically it was just, it's, my exhibit's 21, A21A to 23, were just sort of examples of something that you can just find on the internet that these companies are out there trying to sell it. It's just basically common sense and common knowledge. You can simply look it up. In the jail call that they relied upon, he never, you know, contrary to what Mr. Tucker says, he never admitted that he had a gun or anything of that nature. He never admitted he had a firearm. He never, it was never asked. It was never referred to. I think his father just simply said, do you have it? Or did you have it? It was not recorded whether or not he had the backpack or what it was. And his father basically said, I don't read his mind. I don't know what he was talking about. And that's what it came out. Did the father suggest the it? He believed he was referencing the gun? I believe he did. But then on cross-examination, I think he said that it's not, you know, I don't know what's going on in his head. I know what's, you know, he could be talking about different things. I don't know. As far as the death or serious bodily harm, as Mr. Tucker points out, it's not required it was a gun. But that's clearly what the context was, was this is my client's putting this implement in front of him, this fellow to the left, not my client, says, at that point in time, says, do you want to, are you ready to die or not? Words of that effect. So it's all in the context of the gun. It's not in the context that we're going to beat you up unless we get these things. The other carjacker was the one, the one to the left was the one who made the statement, not my client. And there were no shots. So there are no further questions, Your Honor. I'm done. Thank you. Thank you, Mr. Rosen. We'll take the case under advisement.